Below is a Memorandum Decision of the Court.



**Marc Barreca**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

_

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| In re: | Case No. 09-10283-MLB |
| ROBERT S. BLENDHEIM and DARLENE G. BLENDHEIM, | |
| Debtors. | |

| | |
|---|---|
| ROBERT S. BLENDHEIM and DARLENE G. BLENDHEIM, | Adversary No. 10-01203-MLB |
| Plaintiffs, | **MEMORANDUM OPINION REGARDING DEBTOR'S MOTION FOR SUMMARY JUDGMENT FOR DETERMINATION OF FEES** |
| v. | |
| THE NOTE HOLDER, AND LITTON LOAN SERVICING, LP, AGENT FOR HSBC BANK, THE INDENTURE TRUSTEE OF THE ORIGINAL LENDER – FIELDSTONE MORTGAGE INVESTMENT TRUST, | |
| Defendant. | |

This matter came before me on May 19, 2016 on Debtors' Motion for Summary Judgment for Determination of Fees (the "**Motion for Summary Judgment**"). The Motion for Summary Judgment was opposed by Ocwen Loan Servicing LLC as servicer for HSBC Bank USA, National Association, as

MEMORANDUM OPINION - 1

Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-1 ("**Ocwen**"). Debtor-Plaintiffs, Robert S. Blendheim and Darlene G. Blendheim ("**Debtors**"), were represented by Taryn M. Darling Hill of Impact Law Group PLLC, and Ocwen was represented by Dillon E. Jackson of Foster Pepper PLLC. Following oral argument, I took the matter under advisement. Thereafter, with my permission, both Debtors and Ocwen submitted additional briefing.

## Jurisdiction

I have jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Western District of Washington, pursuant to 28 U.S.C. § 1409.

## Relevant Facts

The relevant facts are undisputed.

On May 17, 2007, Debtors filed for bankruptcy under Chapter 7[1] of the Code.[2] Debtors received their discharge on January 14, 2009, and the case was closed on November 4, 2010.

On January 15, 2009, the day following their discharge in their Chapter 7 case, Debtors filed a second bankruptcy under Chapter 13 of the Code - initiating a so-called "Chapter 20" case. Given that Debtors' unsecured debts had been discharged in their Chapter 7 case, the Chapter 13 was filed to address Debtors' secured debts relating to their primary residence, a condominium located at 3717 Beach Drive SW, No. 315, Seattle, Washington (the "**Residence**").

---

[1] *In re Blendheim*, 07-12263-MLB (Bankr. W.D. Wash. filed May 17, 2007).

[2] All references to "Code" and "Section" herein refer to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

MEMORANDUM OPINION - 2

**Below is a Memorandum Decision of the Court.**

<u>Secured Mortgage Claims</u>

On January 28, 2009, Litton Loan Servicing L.P. ("**Litton**"), Ocwen's predecessor[3], filed a proof of claim in the amount of $419,498.75, alleging it was secured by a first position deed of trust (the "**First Position Lien**") on the Residence (the **"Proof of Claim"**). Debtors' scheduled the First Position Lien as disputed and contingent, and also acknowledged a second position lien (the "**Second Position Lien**").

<u>Claim Objection Regarding First Position Lien</u>

On October 9, 2009, Debtors objected to Ocwen's Proof of Claim (the "**Claim Objection**"), asserting that it was not supported by sufficient evidence. Although Ocwen had attached a copy of the relevant deed of trust (the "**Deed of Trust**") to its Proof of Claim, Ocwen had failed to attach a copy of the promissory note (the "**Note**"). Moreover, Debtors alleged that a copy of the Note previously provided to them by Ocwen pursuant to a Qualified Written Request contained a forgery of Mr. Blendheim's signature. The response deadline for the Claim Objection was November 6, 2009.

On October 27, 2009, prior to the response deadline for the Claim Objection, Ocwen filed a motion that was mistitled "Motion for Adequate Protection Disbursements, HSBC Bank USA Noteholder," (the "**Motion for Adequate Protection**"), which requested an order terminating the automatic stay. Ocwen concurrently filed copies of the Note, Deed of Trust, and assignment of the Deed of Trust.

Ocwen did not respond to the Claim Objection. On November 18, 2009, Judge Overstreet entered an order sustaining the Claim Objection (the "**Order Sustaining Claim Objection**"). Debtors subsequently served Ocwen and its counsel with a copy of the Order Sustaining Claim Objection.

---

[3] At the outset of this case, Litton acted as servicer for HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-1. Litton eventually transferred servicing of the First Position Lien to Ocwen. The change in the servicing agent is irrelevant to the dispute addressed herein. Thus, for ease of reading, I will hereafter refer to Litton as Ocwen.

MEMORANDUM OPINION - 3

Thereafter, Debtors filed a response to Ocwen's Motion for Adequate Protection, which referenced their Claim Objection *and* the fact that an order had been entered disallowing Ocwen's claim. Several days later, Ocwen's counsel inexplicably filed a "Notice to Court Motion [for Adequate Protection] Withdrawn, Hearing Stricken" and a "Request for No Future Electronic Notice."

Motion to Avoid the Second Position Lien

On October 16, 2009, Debtors filed a motion to avoid the Second Position Lien, alleging that it was wholly unsecured and could be "stripped off" pursuant to § 506(a). The response deadline was November 12, 2009, but no response was filed. On November 19, 2009, one day after entering the Order Sustaining Claim Objection, Judge Overstreet entered an Order Avoiding Wholly Unsecured Junior Mortgage (the "**Order Stripping Second Position Lien**"). The Order Stripping Second Position Lien disallowed the lienholder's secured claim, allowed the lienholder an unsecured claim of $90,474.02 (the "**Second Position's Unsecured Claim**"), and declared that the lienholder's lien was void.

Adversary Proceeding to Void Ocwen's First Position Lien

On April 28, 2010, Debtors filed an adversary proceeding, *Blendheim v. Note Holder*, 10-01203-MLB (the "**Adversary Proceeding**"). Debtors sought to void the First Position Lien pursuant to § 506(d), based on the First Position Lien claim having been disallowed pursuant to the Order Sustaining Claim Objection. Debtors also asserted multiple tort claims based on alleged fraud and violations of various statutes, including the Consumer Protection Act, TILA, and RESPA, and sought damages.

On July 13, 2010, the above-captioned case (09-10283) and the related adversary proceeding (10-01203) were transferred from Judge Overstreet to me.

In February 2011, Debtors moved for partial summary judgment seeking an order avoiding the First Position Lien based solely on § 506(d) and the Order Sustaining Claim Objection.

MEMORANDUM OPINION - 4

Motion to Set Aside the Order Sustaining Claim Objection

More than 18 months after entry of the Order Sustaining Claim Objection, Ocwen moved to set it aside - alleging mistake, inadvertence, surprise, excusable neglect, various due process issues, and inadequate service. On June 28, 2011, following a contested hearing, I denied Ocwen's request (the "**Order Denying Motion to Set Aside Order Sustaining Claim Objection**"). Ocwen appealed to the District Court.

Summary Judgment

Debtors renewed their motion for partial summary judgment in the Adversary Proceeding, again asserting that because the Order Sustaining Claim Objection disallowed the claim, Ocwen's lien must be avoided pursuant to § 506(d). Following a hearing, I granted Debtors' renewed motion, and voided and cancelled the First Position Lien (the "**Order Voiding First Position Lien**"). Ocwen moved for reconsideration, which I denied. Ocwen appealed to the District Court.

Debtor's Ninth Amended Plan

Debtors Ninth Amended Plan (the "**Ninth Amended Plan**"), dated October 15, 2011, indicated that Debtors were below median income and not eligible for a discharge.[4] The Ninth Amended Plan provided nothing for the First Position or Second Position Lien holders, and provided nothing for allowed unsecured claims.

 Objections to Debtor's Ninth Amended Plan

The Trustee and Ocwen opposed confirmation of the Ninth Amended Plan.[5]  They asserted that the case was filed in bad faith, and that the Plan failed to provide for the liquidation value of the estate,

---

[4] Debtors' Ninth Amended Plan was substantially similar to the Eighth Amended Plan, but was filed prior to the confirmation hearing on the Eighth Amended Plan.

[5] For a thorough articulation of the confirmation issues ultimately appealed to the Ninth Circuit, see *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477 (9th Cir. Wash. 2015).

MEMORANDUM OPINION - 5

was not feasible, and was filed in bad faith because it voided both the First Position Lien and Second Position Lien. They further asserted that it was impermissible to file a Chapter 20 case which voided a lien upon plan completion, rather than discharge.

On December 27, 2011, I entered a memorandum opinion denying confirmation of the Ninth Amended Plan. I found no inherent barrier to a Chapter 20 case or lien stripping upon plan completion, but concluded that the plan failed because it inequitably and inconsistently proposed to take advantage of both the Order Voiding First Position Lien and Order Stripping Second Position Lien. The Debtors moved for reconsideration, which I denied. The Debtors then appealed both orders to the District Court.

<u>Confirmed Plan</u>

In March 2012, Debtors filed their eleventh, and final, amended plan. It provided for reinstatement of the Second Position Lien and that the First Position Lien would be "voided and cancelled" upon plan completion. Again, Ocwen and the Chapter 13 Trustee objected. On April 13, 2012, I confirmed the Plan (the "**Plan Confirmation Order**"), and on July 18, 2012 I entered an Order in Aid of Implementation of Plan (the "**Order in Aid of Implementation**"). Ocwen appealed both orders to the District Court.

<u>Appeal to District Court</u>

On appeal to the District Court, Chief Judge Pechman consolidated the four appeals.[6] On March 29, 2013 she entered an order, affirming my Order Denying Motion to Set Aside Order Sustaining Claim Objection, the Order Voiding First Position Lien, the Plan Confirmation Order, and the Order in Aid of Implementation (the "**District Court Judgment**"). Judge Pechman declined to grant Debtors' request for an award of attorneys' fees under the Deed of Trust and RCW 4.84.330, reasoning that the action was not "on the contract," rendering RCW 4.84.330 inapplicable.

---

[6] Debtors dismissed their appeal of my order denying confirmation of their Ninth Amended Plan and the attendant order denying reconsideration.

MEMORANDUM OPINION - 6

### Appeal to Ninth Circuit

On further appeal, the Court of Appeals for the Ninth Circuit affirmed the portions of the District Court Judgment affirming my orders. However, the Ninth Circuit vacated the portion of the District Court Judgment denying Debtors' request for attorneys' fees. Without addressing or considering the merits thereof, the Ninth Circuit held that the District Court lacked jurisdiction to make such a determination because I had not addressed the issue of attorneys' fees in the first instance. The Ninth Circuit instructed the District Court to remand to me for a determination of Debtors' entitlement to attorneys' fees (altogether, the "**Ninth Circuit Judgment**").

### Debtors' Request for Attorneys' Fees

On remand, Debtors seek to recover from Ocwen a portion of the attorneys' fees and costs incurred in this litigation over the course of the past six years, with respect to (a) litigating the Proof of Claim and obtaining the Order Sustaining Claim Objection; (b) litigating and obtaining the Order Voiding First Position Lien in the Adversary Proceeding, (c) litigating and obtaining the Order Denying Motion to Set Aside Order Sustaining Claim Objection, (d) litigating confirmation and obtaining the Plan Confirmation Order and Order in Aid of Implementation, (e) litigating and obtaining the District Court Judgment and Ninth Circuit Judgment, and (f) pursuing recovery of Debtors' attorneys' fees and costs.

As the basis for their request, Debtors rely on RCW 4.84.330 and language in the Deed of Trust, which was attached to Ocwen's Proof of Claim. The Deed of Trust provides in relevant part:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) <u>there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy,</u> probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations),… then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest

MEMORANDUM OPINION - 7

in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property, Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over the Security Instrument; <u>(b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument including its secured position in a bankruptcy proceeding</u> …
.

<u>Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by the Security Instrument. These amounts shall bear interest at the Note rate</u> from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

. . .

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including but not limited to, reasonable attorneys' fees and costs of title defense….

. . .

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Agreement, shall include without limitation attorneys' fees incurred by Lender <u>in any bankruptcy proceeding or on appeal</u>.

(emphases added). Debtors seek a total of $262,732.25 of attorneys' fees and $4,321.26 of costs.

Debtors also seek to recover interest on attorneys' fees and costs I may award, calculated at the rate set forth in the Note, and attorneys' fees and costs related to litigating this Motion for Summary Judgment.

MEMORANDUM OPINION - 8

**Relevant Law**

Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986).   A fact is material if it might affect the outcome of the suit under the governing law.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When a properly supported motion for summary judgment has been presented, the adverse party "may not rest upon the mere allegations or denials of his own pleading." *Id.* Rather, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 256.  While all justifiable inferences are to be drawn in favor of the non-moving party, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citations omitted).

RCW 4.84.330

RCW 4.84.330 provides in relevant part that:

> In any action on a contract . . . where such contract . . . specifically
> provides that attorneys' fees and costs, which are incurred to enforce the
> provisions of such contract . . .  shall be awarded to one of the parties, the
> prevailing party, whether he or she is the party specified in the contract . . .
> or not, shall be entitled to reasonable attorneys' fees in addition to costs
> and necessary disbursements. . . .  As used in this section "prevailing
> party" means the party in whose favor final judgment is rendered.

RCW 4.84.330.  The purpose behind the enactment of RCW 4.84.330 is "that unilateral attorney fees provisions be applied bilaterally." *See Herzog Aluminum v. Gen. Am. Window Corp.*, 39 Wn. App. 188, 196-97 (1984).  The statute serves a remedial purpose and "ensures that no party will be deterred from

MEMORANDUM OPINION - 9

bringing an action on a contract or lease for fear of triggering a one-sided fee provision." *See Wachovia SBA Lending, Inc. v. Kraft,* 165 Wn.2d 481, 489 (2009).

      a. <u>"Action on a contract"</u>

The Washington Supreme Court has adopted a two-part test to determine whether an action is "on a contract" for purposes of a contractual attorneys' fees provision. "[A]n action is on a contract if the action arose out of the contract and if the contract is central to the dispute." *Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n,* 116 Wn.2d 398, 413 (1991) (applying the two-part test for a fee determination under a bilateral attorneys' fees provision). This two-part test applies to determinations of contract-based fee awards for both bilateral attorneys' fees provisions, and unilateral attorneys' fees provisions for purposes of RCW 4.84.330. *See also Hemenway v. Miller*, 116 Wn.2d 725 (1991) (applying the two-part test for a fee determination under a unilateral fees provision pursuant to RCW 4.84.330).

The language "any action on a contract" is "broad." *See Herzog*, 39 Wn. App. at 197. It "encompasses any action in which it is alleged that a person is liable on a contract." *Id.* It may also encompass, for example, disputes involving the formation, validity, enforceability, or protection of contractual rights. *See e.g. Herzog*, 39 Wn. App. at 192, 197 (validity and formation); *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 839 (2004) (validity and enforceability); *Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 235-36 (Wash. Ct. App. 2010) (protection of contractual rights); *Moseley*, 2011 U.S. Dist. LEXIS 142701, at *7 (W.D. Wash. Dec. 12, 2011) (validity and protection of contractual rights).

However, "[w]hen the underlying documents merely provide the background [for a claim] . . . the action is not on the contract." *Hemenway*, 116 Wn.2d at 743. Similarly, "[i]f a party alleges breach of a duty imposed by an external source, such as a statute or the common law, the party does not bring

MEMORANDUM OPINION - 10

an action on the contract, even if the duty would not exist in the absence of a contractual relationship." *Boguch v. Landover Corp.,* 153 Wn. App. 595, 615 (Wash. Ct. App. 2009). The contract must be "central to the dispute." And the phrase "central to the dispute" requires a showing of more than "but for" causation. It is not sufficient to show merely that a dispute would not have occurred "but for" the underlying contractual relationship.

### b. "Prevailing Party"

The prevailing party is the one "in whose favor final judgment is rendered." RCW 4.84.330. A "final judgment" means "a court's last action that settles the rights of the parties and disposes of all issues in controversy." *Wachovia,* 165 Wn.2d at 492 (citing Black's Law Dictionary 859 (8th ed. 2004)). "If neither party wholly prevails then the party who substantially prevails can recover attorney fees." *Columbia Cmty. Bank v. Newman Park, LLC,* 166 Wn. App. 634, 646 (Wash. Ct. App. 2012) (citing *Piepkorn v. Adams*, 102 Wn. App. 673, 686 (2000)).

### c. Award of Attorneys' Fees

"An award of attorney fees and costs under RCW 4.84.330 is mandatory, with no discretion except as to the amount." *Nw. Cascade, Inc. v. Unique Constr., Inc.,* 187 Wn.App 685, 704 (Wash. Ct. App. 2015); *see also Business Finance Corp., v. Harding*, 2004 Wash. App. LEXIS 1252, at *9 (Wash. Ct. App. June 21, 2004) (same). In fact, "[a]ttorneys fees and costs are awarded to the prevailing party even when the contract containing the attorneys fee provision is invalidated." *Labriola*, 152 Wn.2d at 839 (collecting cases); *Herzog*, 39 Wn. App. at 192 (awarding fees despite a determination that there was no valid contract).

The amount of a fee award is discretionary and must be reasonable. *See e.g. Boguch*, 153 Wn. App. at 619; *Ethridge v.* Hwang, 105 Wn. App. 447, 460 (Wash. Ct. App. 2001) ("A trial judge is given broad discretion in determining the reasonableness of an award.").

MEMORANDUM OPINION - 11

d. <u>Apportionment</u>

The prevailing party should be awarded attorney fees only for the legal work completed on the portion of the claim permitting such an award, because while collateral claims may well be related to the contract claim and therefore conveniently tried together, they need not be resolved in order to decide the primary claim." *See C-C Bottlers, Ltd. v. J.M. Leasing, Inc.*, 78 Wn.App. 384, 389-90 (Wash. Ct. App. 1995) (remanding with instructions to segregate fees and costs incurred prosecuting the promissory notes claims, including fees and costs incurred responding to the affirmative defense, from those incurred in defending counterclaims).

As set forth in *Boguch v. Landover Corp.*, 153 Wn. App. 595, 619-620 (Wash. Ct. App. 2009),

> The general rule is that if attorney fees are recoverable for only some of a party's claims, the award must properly reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues. A trial court need not segregate time, however, if it determines that the various claims in the litigation are so related that no reasonable segregation of successful and unsuccessful claims can be made. A court is not required to artificially segregate time … where the claims all relate to the same fact pattern, but allege different bases for recovery. The party claiming an award of attorney fees has the burden of segregating its lawyer's time.

(internal quotations and citations omitted). *See also Cardenas v. Shannon*, 2016 Bankr. LEXIS 2699 (9th Cir. B.A.P. July 22, 2016) (citing *Hume v. Am. Disposal Co.*, 124 Wash.2d 656, 673 (1994)).

e. <u>Fees on Appeal</u>

"A contract provision that authorizes attorney fees below authorizes attorney fees on appeal." *Nw. Cascade,* 187 Wn.App. at 707.

MEMORANDUM OPINION - 12

<u>Reciprocal Fees Statutes</u>

Only a few states have reciprocal fees statutes comparable to RCW 4.84.330.[7] Washington's reciprocal fees statute, RCW 4.84.330, was drafted based on California's reciprocal fees statute, Cal. Civ. Code § 1717[8], rendering the two statutes quite similar. Therefore, I conclude that discussions of Cal. Civ. Code §1717 can be relevant and useful in interpreting RCW 4.84.330.[9]

<u>*Penrod* and *Bos*</u>

Recently the Ninth Circuit issued two opinions, *Penrod* and *Bos,* interpreting the applicability of Cal. Civ. Code § 1717. *See In re Penrod*, 802 F.3d 1084 (9th Cir. 2015); *In re Bos*, 818 F.3d 486 (9th Cir. 2016).

---

[7] *See* Jeffrey C. Bright, *Unilateral Attorney's Fees Clauses: A Proposal to Shift to the Golden Rule,* 61 Drake L. Rev. 85, 89 n.12 (Fall 2012) (noting Cal. Civ. Code § 1717 (West 2009 & Supp. 2012); Fla. Stat. Ann. § 57.105(7) (West 2006 & Supp. 2012); Haw. Rev. Stat. § 607-14 (1993 & Supp. 2007); Mont. Code Ann. § 28-3-704 (2011); Or. Rev. Stat. Ann. § 20.096 (West 2003 & Supp. 2012); Utah Code Ann. § 78B-5-826 (LexisNexis 2008 & Supp. 2011); Wash. Rev. Code. Ann. § 4.84.330 (West 2006 & Supp. 2012)).

[8] Cal. Civ. Code § 1717(a) provides in relevant part that,

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether her or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

[9] As explained in *Herzog,*

> Our Legislature enacted RCW 4.84.330 in 1977. With the exception of a few additional words, it is a duplicate of the Cal. Civ. Code § 1717 . . . which had been adopted and judicially interpreted prior to 1977. . . . The marked similarities between section 1717 and RCW 4.84.330 strongly supports the conclusion that our Legislature utilized section 1717 as a paradigm. Thus, pre-1977 California judicial interpretations of section 1717 are persuasive evidence of our Legislature's intent.

*See Herzog*, 39 Wn. App. at 194-95.

Although Washington and California courts have developed their own interpretations of their statutes' respective provisions, courts have viewed interpretations of Cal. Civ. Code §1717 as persuasive in interpreting RCW 4.84.330. *See e.g. Northwest Acceptance Corp. v. Paffile*, 1988 U.S. App. LEXIS 22312, at *18-20, n.10 (9th Cir. Jan. 12, 1988) (noting that "RCW § 4.84.330 is a near duplicate of Cal. Civ. Code § 1717" and that although California cases "decided after the enactment of Wash. Rev. Code § 4.84.330 . . . may carry less weight than pre-enactment California cases" their reasoning was "useful in the absence of a Washington decision addressing [the] precise question"); *Gamache v. Groenig*, 1997 Wash. App. LEXIS 1767, at *14 (Wash. Ct. App. 1997) (unpublished) (stating that because "RCW 4.84.330 was based upon California Civil Code sec. 1717, . . . California cases interpreting that section are persuasive"); *Moore v. ING Bank, FSB*, 2011 U.S. Dist. LEXIS 91340, at *5 (W.D. Wash. Aug. 16, 2011) (citing a 2010 California case).

MEMORANDUM OPINION - 13

In *Penrod*, a bankruptcy debtor had purchased a vehicle for $25,000, but borrowed $32,000 to purchase it. She rolled over the "negative equity" from a prior auto loan into a new loan and gave the creditor a purchase money security interest (or "PMSI"). At the time she filed for bankruptcy, the loan balance was $26,000. The debtor sought to confirm a Chapter 13 plan that bifurcated the creditor's security interest into a $16,000 secured claim and $10,000 unsecured claim. The creditor objected, arguing that because it held a PMSI under the contract it was entitled to a secured claim for the full $26,000 loan balance under § 1329(a). The Ninth Circuit considered whether the creditor's PMSI was a PMSI for bankruptcy purposes, and ultimately determined that bifurcation was appropriate.

The court then considered "whether a debtor who prevails in a contract dispute on the basis of federal bankruptcy law may recover reasonable attorney's fees" under Cal. Civ. Code § 1717. *Penrod,* 802 F.3d at 1085. Specifically, at issue was interpretation of the phrase "on a contract" under § 1717. The court determined that because the creditor "sought to enforce the provisions of its contract with [the debtor] when it objected to confirmation of her proposed Chapter 13 plan," its action was "on a contract." It further concluded that § 1717 did not "categorically preclude[] an award of attorney's fees when a party successfully limit[ed] enforcement of a contract solely on the basis of federal bankruptcy law." *Id.* at 1089.

In *Bos*, a creditor objected under § 523(a)(4) to a bankruptcy debtor's attempt to discharge a state court judgment that was based on contracts between them. The Ninth Circuit determined that § 523(a)(4) did not apply because the debtor was not a "fiduciary" under ERISA. As the prevailing party, the debtor sought to recover his attorneys' fees under § 1717. The Ninth Circuit held that fees were not appropriate because the nondischargeability proceeding was not an action "on a contract." It reasoned that the debtor had *conceded* that the relevant contracts were valid and had been breached; the only issue

MEMORANDUM OPINION - 14

before the court was dischargeability under bankruptcy law.  It was critical that the enforceability of the contracts had never been at issue.

## Discussion

Because there are no disputed issues of fact, I conclude it is appropriate to resolve this matter on summary judgment.

Debtors' Request for Attorneys' Fees and Costs

Notably, Debtors are not seeking an award of *all* of their attorneys' fees and costs.  Prior to filing the Motion for Summary Judgment, Debtors reviewed their billing statements and indicated the specific fee entries for which they seek compensation.

As set forth above, RCW 4.84.330 requires: (1) an action on a contract, (2) that the contract provide for attorneys' fees and costs incurred to enforce the provisions of that contract, (3) a prevailing party that obtains a final judgment, and (4) a determination of reasonable attorneys' fees and costs.

Ocwen did not challenge the second or fourth factors.  The relevant contract between the parties, the Deed of Trust, provides for reasonable attorneys' fees and costs for Ocwen "in any action or proceeding to construe or enforce any term of [the Deed of Trust] . . . includ[ing] without limitation attorneys' fees incurred by [Ocwen] in any bankruptcy proceeding or on appeal."  And, although unchallenged, I conclude that Debtors' counsel's fees are reasonable given the hours worked, the quality of legal services provided, the appropriate documentation of such services, and overall success in the litigation.

Fees and Costs Awarded

Upon my review of Debtors' request for attorneys' fees and costs, including review of the billing statements, I have apportioned Debtors' request into nine categories with attorneys' fees and costs

MEMORANDUM OPINION - 15

attributable to: (1) litigation surrounding the Proof of Claim, (2) litigation surrounding the Motion for Adequate Protection, (3) analysis of lender liability claims *prior* to filing the Adversary Proceeding and assertions of those claims in the Adversary Proceeding, (4) analysis of loan documents and lien avoidance claims *prior* to filing the Adversary Proceeding and assertion of the lien avoidance claim in the Adversary Proceeding, (5) plan formulation and confirmation-related litigation (6) miscellaneous work in the main case and unspecific entries, (7) inseparable entries in the consolidated appeal to the Ninth Circuit, (8) litigation surrounding this Motion for Summary Judgment, and (9) interest on attorneys' fees awarded pursuant to the Deed of Trust and RCW 4.84.330.

For the reasons discussed below, I conclude that it is appropriate to apply the attorneys' fees provision in the Deed of Trust reciprocally, and I award Debtors reasonable attorneys' fees and costs for a portion of their requested fees and costs pursuant to RCW 4.84.330.

1. <u>Attorneys' Fees and Costs Related to Litigation Surrounding the Proof of Claim</u>

Debtors requested $29,052.50 of fees and costs attributable to litigation surrounding the Proof of Claim.

a. <u>Ocwen brought an "action on the contract" by filing the Proof of Claim.</u>

Ocwen asserted that Debtors are not entitled to attorneys' fees under RCW 4.84.330 because Debtors' Claim Objection was not an "action on the contract." However, Ocwen mischaracterizes the dispute.

By filing the Proof of Claim, Ocwen brought an "action on [its] contract" with Debtors. *See* RCW 4.84.330. Ocwen asserted it was entitled to recover $419,498.75[10] pursuant to its rights under the Note and Deed of Trust.

---

[10] This was the asserted balance as of the Petition Date.

MEMORANDUM OPINION - 16

Ocwen's Proof of Claim was analogous to a complaint asserting Debtors' liability on the Note and attempting to enforce its rights under the Deed of Trust. *See In re Brosio,* 505 B.R. 903, 912 (9th Cir. B.A.P. 2014) ("The filing of a proof of claim is analogous to filing a complaint in the bankruptcy case."); *In re Locklin*, 2014 Bankr. LEXIS 5401, at *6 (Bankr. C.D. Cal. 2014) (same); *see also Moran v. Deutsche Bank Nat'l Trust Co. as Indenture Trustee*, 2012 Bankr. LEXIS 5837, at *8 (Bankr. D. Haw. Dec. 20, 2012) (concluding that because "[a] proof of claim is the means by which a creditor presents and demands payment of its claim in a bankruptcy case," filing a proof of claim constituted an "action" on a contract as used in Hawaii's reciprocal fees statute, Haw. Rev. Stat. § 607-14).

An action is "on a contract" if "the action arose out of the contract and if the contract is central to the dispute." *See Seattle-First Nat'l Bank*, 116 Wn.2d at 413. Ocwen's rights as asserted in the Proof of Claim "arose out of" the Note and Deed of Trust. Enforcement of the Note and Deed of Trust was the only possible source of Ocwen's asserted right to collect from Debtors. The Deed of Trust was also "central to the dispute" between Ocwen and Debtors. The Proof of Claim asserted Debtors were liable for the balance of the Note, and Ocwen pursued its claim against Debtors on the basis of its security interest in the Residence as set forth in the Deed of Trust.

Debtors challenged Ocwen's ability to enforce its rights under the Note and Deed of Trust by filing their Claim Objection. Debtors asserted that the Proof of Claim was not supported by sufficient evidence of enforceability. Debtors further asserted that a copy of the Note previously provided to them by Ocwen contained a forgery of Mr. Blendheim's signature, and intimated that this was the reason for Ocwen's failure to provide a Note with its Proof of Claim. Debtors prevailed on their Claim Objection because, by defaulting, Ocwen failed to demonstrate it had the right to enforce the Note and Deed of Trust.

MEMORANDUM OPINION - 17

Although the dispute surrounding Ocwen's ability to enforce its rights arose in a bankruptcy case, and was resolved in the context of proof of claim litigation, it is the nature of the underlying enforcement dispute that is significant for purposes of applying RCW 4.84.330. Compare *Bos*, 818 F.3d at 490 (concluding that the action was not "on a contract" where the debtor had already conceded the contract's validity and breach) with *Penrod,* 802 F.3d at 1088 (concluding that an action was "on a contract" in confirmation-related litigation determining whether bankruptcy law precluded a secured contract from being enforced in bankruptcy).[11]

Ocwen asserts that the action was not "on the contract" because the Order Sustaining Claim Objection was entered by default and did not directly address the merits. However, it is the nature of the dispute that is material; not the legal mechanism for success on the claim. "A party who obtains (or defeats) enforcement of a contract on purely legal grounds, as by prevailing on a motion to dismiss with prejudice or by showing that a defendant's contract-based defenses are barred by federal statute or federal common law, still prevails in an action on a contract." *Penrod*, 802 F.3d at 1089 (internal quotations omitted).[12]

---

[11] Although dicta in a recent case, *Lacey Marketplace Associates II, LLC v. United Farmers of Alberta Cooperative Ltd.*, 2015 U.S. Dist. LEXIS 9858 (W.D. Wash. Jan. 28, 2015) and dicta in an earlier case, *Boguch v. Landover Corp.*, 153 Wn. App. 595, 616, 618-19 (Wash. Ct. App. 2009), could be read to suggest that specific terms within a contract must be in dispute in order for an action to be "on a contract" and for RCW 4.84.330 to apply, I do not interpret the phrase "action on a contract" so narrowly.

[12] Washington courts have awarded attorneys' fees under RCW 4.84.330 in various contexts that did not directly address a dispute on the merits. *See e.g., Business Finance Corp. v. Harding*, 2004 Wash. App. LEXIS 1252, at *6, 16, 18 (Wash. Ct. App. 2004) (unpublished) (affirming a fees award to a party who prevailed via dismissal of a permissive counterclaim claim before trial, under Wash. Super. Ct. Civ. R. 12); *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 2007 Wash. App. LEXIS 2094, at *8-9, 19-20 (Wash. Ct. App. July 23, 2007) (unpublished) (affirming a fees award to a defendant who prevailed via dismissal of the claim before trial, under Wash. Super. Ct. Civ. R. 12(b)(6) (treated as a summary judgment under Wash. Super. Ct. Civ. R. 56), because plaintiff failed to state a claim under the relevant contract); *See e.g. In re Earl*, 164 Wn.App. 447 (Wash. Ct. App. 2011) (awarding fees under RCW 4.84.330, in the probate context, where an estate prevailed in establishing that a creditor's claim based on a personal guaranty was time-barred by statute).

MEMORANDUM OPINION - 18

### b.   Debtors were the "prevailing party"

Debtors prevailed on their Claim Objection.  Pursuant to the Order Sustaining Claim Objection, Ocwen's claim was disallowed and its First Position Lien extinguished.  Therefore, Ocwen was the "prevailing party."  *See Locklin*, 2014 Bankr. LEXIS 5401, at *6 (concluding that "the Debtor succeeded on the Claim Objection, and therefore is considered the prevailing party").

### c.   Debtors obtained a "final judgment"

As explained above, Ocwen's Proof of Claim was analogous to a complaint asserting Debtors' liability on the Note and attempting to enforce its rights under the Deed of Trust.  Correspondingly, Debtor's Claim Objection was analogous to filing an answer, or other responsive pleading.  *See Brosio*, 505 B.R. at 912 ("[A] claim objection by the debtor is analogous to an answer."); *Locklin*, 2014 Bankr. LEXIS 5401, at *6 (same).

In substance, Debtor's Claim Objection was analogous a motion to dismiss under Federal Rule of Civil Procedure 12 – testing the sufficiency of Ocwen's Proof of Claim which sought to enforce the Deed of Trust.  The combination of the Order Sustaining Claim Objection and Order Denying Motion to Set Aside Order Sustaining Claim Objection was analogous to an order dismissing a complaint with prejudice.  Once those orders were entered, Ocwen had no ability to amend its Proof of Claim.  As with an order dismissing a complaint with prejudice, those orders finally determined the substantive rights of the parties and constituted a "final judgment" for purposes of RCW 4.83.330.  *See e.g., Moore*, 2011 U.S. Dist. LEXIS 91340, at *6 (concluding that "dismissal with prejudice is a 'final judgment' . . . for the purpose of RCW 4.84.330"); *c.f. Locklin*, 2014 Bankr. LEXIS 5401, at *11-13 (tentatively ruling that the debtor was *not* the "prevailing party" on a successful claim objection where the creditor was given leave to amend its claim, for purposes of § 1717).[13]

---

[13] In Washington it appears that the critical distinction for determining whether a judgment is "final" for purposes of RCW 4.84.330 is whether the judgment is with or without prejudice.  *See Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481,

MEMORANDUM OPINION - 19

In sum, Ocwen's litigation regarding the Proof of Claim was an "action on the contract," Debtors were the prevailing party in the Proof of Claim litigation, and Debtors obtained a final judgment. Therefore, an award of fees is appropriate.

I award Debtors $29,052.50 for attorneys' fees and costs related to litigation surrounding the Proof of Claim.

2. Attorneys' Fees and Costs Related to Litigation Surrounding the Motion for Adequate Protection

Debtors requested $1,277.50 of fees and costs attributable to litigation surrounding the Motion for Adequate Protection. Because the Motion for Adequate Protection was ultimately withdrawn, no party obtained a "final judgment" or "prevailed." *See Wachovia SBA Lending, Inc.* 165 Wn.2d at 492 (concluding a voluntary dismissal does not yield a "prevailing party" or "final judgment"). Therefore, Debtors are not entitled to an award of attorneys' fees and costs related to litigation surrounding the Motion for Adequate Protection.

3. Attorneys' Fees and Costs Related to Analysis of Lender Liability *Prior to* Filing the Adversary Proceeding, and Assertion of Lender Liability Claims in the Adversary Proceeding

Debtors requested $4,666.50 of fees and costs attributable to analysis of "lender liability" claims *prior* to filing the adversary proceeding - such as analysis of claims based on alleged fraud and violations of various statutes, including the Consumer Protection Act, MERS, TILA, and RESPA. Debtors further requested $15,299.79 of fees and costs attributable to asserting lender liability claims in the Adversary Proceeding. Because no party "prevailed" or obtained a "final judgment" on Debtors'

---

492 (Wash. 2009) (concluding that a voluntary dismissal is not a "final judgment" for purposes of RCW 4.84.330 because it "leaves the parties as if the action had never been brought" and "the plaintiff may refile the suit"); *Alliance One Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 404 (Wash. 2014) (concluding that a "defendant cannot be considered a prevailing party when the plaintiff voluntarily dismisses the action for purposes of RCW 4.84.330"); *Wachovia SBA Lending v. Kraft*, 138 Wn. App. 854, 862 (Wash. Ct. App. 2007) (reasoning that "we cannot say that the legislature intended a suit dismissed without prejudice to yield a 'prevailing party' under RCW 4.84.330").

MEMORANDUM OPINION - 20

lender liability claims, Debtors are not entitled to an award of attorneys' fees and costs related to analysis or assertion of these claims.

4. <u>Attorneys' Fees and Costs Related to Analysis of Loan Documents and Lien Avoidance Claims</u> *Prior to* Filing the Adversary Proceeding, and Assertion of the Lien Avoidance Claim in the Adversary Proceeding

Debtors requested $3,717.50 of fees and costs attributable to analysis of loan documents and lien avoidance claims *prior* to filing the Adversary Proceeding.  Debtors further requested $25,700.97 of fees and costs attributable to assertion of the § 506(d) lien avoidance claim in the Adversary Proceeding.

Although Debtors alleged numerous claims against Ocwen in the Adversary Proceeding, the only claim that was actually litigated, by summary judgment, was the § 506(d) claim -  which resulted in the Order Voiding First Position Lien.

The § 506(d) claim was, in essence, an extension of the dispute surrounding the Proof of Claim.  The § 506(d) dispute was an "action on the contract" because it directly flowed from the prior dispute surrounding the Proof of Claim and continued to test the validity and enforceability of Ocwen's lien created by the Deed of Trust.  *See e.g. Moseley*, 2011 U.S. Dist. LEXIS 142701, at *7-8 (concluding claims were "on the contract" because they were a "direct attack on both the Deed of Trust and the loan it secures"); *Moore,* 2011 U.S. Dist. LEXIS 91340, at *7 (recognizing that a disclosure claim was "on the contract" because it was "closely linked with [a] recission claim" which was "part of collecting, enforcing, or protecting Lender's rights and remedies under [the] Security Instrument").

Entry of the Order Voiding First Position Lien was a "final judgment" as it finally voided the Fist Position Lien on the Residence, and rendered Debtors the "prevailing party."

Analysis of the loan documents and lien avoidance claims was incident and essential to asserting the § 506(d) lien avoidance claim in the Adversary Proceeding.  *See e.g. Moore*, 2011 U.S. Dist. LEXIS 91340, at *8-9 (awarding pre-lawsuit time in a fee award).

MEMORANDUM OPINION - 21

Therefore, I award Debtors $25,700.97 for attorneys' fees and costs related to asserting the § 506(d) lien avoidance claim in the Adversary Proceeding, and $3,717.50 for attorneys' fees and costs related to analysis of loan documents and lien avoidance claims prior to filing the Adversary Proceeding.

5. <u>Attorneys' Fees and Costs Related to Plan Formulation and Confirmation-related Litigation</u>

Debtors requested $23,344.35 of fees and costs attributable to plan formulation and confirmation-related litigation.

Debtors' general efforts to formulate and confirm a plan were not "actions on the contract," as they did not involve the Deed of Trust between Debtors and Ocwen. Furthermore, even though Debtors and Ocwen litigated numerous, specific confirmation disputes, those disputes were also not "actions on the contract."

Ocwen objected to Debtors' Ninth, Tenth, and Eleventh Plans based on alleged (1) lack of feasibility, (2) failure to provide for the liquidation value of the estate, (3) bad faith in proposing a plan that stripped both the First and Second Position Liens, and/or (4) legal inability of a debtor to strip a lien in a Chapter 13 case in which the debtor was not eligible for a discharge.

The Deed of Trust between Debtors and Ocwen merely provided the background for these disputes. Ocwen's feasibility and liquidation value objections were based on the plans' terms, Debtors' alleged inability to perform the plans given their income and expenses, and the plans' alleged noncompliance with bankruptcy law. Ocwen's bad faith objections involved legal disputes regarding what a debtor, *in general*, may permissibly accomplish in a Chapter 13 case and plan of reorganization. Although these confirmation disputes would not have existed "but for" the Deed of Trust forming the basis of the parties' relationship, the Deed of Trust was not "central to the disputes." *See Hemenway*,

MEMORANDUM OPINION - 22

116 Wn.2d at 742-43 (rejecting a "but for" line of analysis).[14]  Therefore, the confirmation disputes between Debtor and Ocwen were not actions "on the contract."

The plan confirmation disputes here are distinguishable from those in *Penrod*, which required an analysis of whether a contract's particular terms fit the Code's definition of a PMSI.  That analysis determined whether the contract could be enforced in bankruptcy, and the appropriate treatment of that contract in the debtor's plan.  *See g Penrod*, 802 F.3d 1084.  Here, the plan confirmation disputes had nothing to do with the contents of the Deed of Trust or the actual enforceability of Ocwen's rights under the Deed of Trust.  Ocwen's ability to enforce its rights under the Deed of Trust had already been determined by the Order Sustaining Claim Objection and Order Voiding First Position Lien.  Debtors' various plans merely referenced the relief encompassed in those orders.

Therefore, Debtors are not entitled to an award of attorneys' fees and costs related to plan formulation and confirmation-related litigation.

6.  <u>Attorneys' Fees and Costs Related to Miscellaneous Work in the Main Case or Unspecific Entries</u>

Debtors requested attorneys' fees and costs attributable to miscellaneous work in the main case.  In addition, certain entries were not specific enough to attribute to a particular category of fees.  These fees and costs totaled $3,050.25 and included work apparently related to the junior mortgage, loan modification (HAMP), scheduling, status updates, generic case review, and miscellaneous motions practice.  I conclude these fees were not "on the contract."  Therefore, Debtors are not entitled to an award of attorneys' fees and costs related to miscellaneous work in the main case or work that could not be categorized.

---

[14] In *Hemenway*, the Washington Supreme Court rejected plaintiffs' claim for attorneys' fees because the note containing the attorneys' fees provision was not central to the dispute.  The dispute was centered on plaintiffs' asserted rights which arose by operation of law under RCW 62A.3-606.  Notwithstanding that plaintiffs sought partial discharge of their obligations under the note, and notwithstanding that the dispute could not have existed in the absence of the note and sale agreement, the note and sale agreement merely provided the background for the actual dispute.  *See Hemenway*, 116 Wn.2d at 743.

MEMORANDUM OPINION - 23

7.  <u>Attorneys' Fees and Costs for Inseparable Entries in the Consolidated Appeal to the Ninth Circuit</u>

Debtors requested $161,401.72 of fees and costs attributable to the consolidated appeal to the Ninth Circuit.  The consolidated appeal involved numerous issues, including disallowance of the Proof of Claim and Order Voiding First Position Lien, and plan confirmation disputes.  The requested fees cannot be feasibly apportioned based on the fee entries themselves and are effectively inseparable.  However, the claim disallowance issues (which were "on the contract" for the reasons stated above) and the confirmation issues (which were *not* "on the contract" for the reasons stated above) appear to have been equally significant and equally litigated in the appeal.  Therefore, I award Debtors half of the requested fees and costs attributable to inseparable entries related to the consolidated appeal to the Ninth Circuit, in the amount of $80,700.86.

8.  <u>Attorneys' Fees and Costs Related to Litigation Surrounding this Motion for Summary Judgment</u>

Debtors have requested an award of fees and costs related to litigation surrounding this Motion for Summary Judgment.  Debtors have substantially prevailed with respect to a substantial portion of their fee request and with entry of this order Debtors will obtain a final judgment.  Therefore, an award of fees and costs is appropriate.  *See e.g. Moore*, 2011 U.S. Dist. LEXIS 91340, at *13 ("awarding fees based on success in an action related to an action on the contract," the court granted "fees for time spent litigating the fee award").

Contingent upon further briefing and submission of time records, I will award Debtors a portion of their reasonable attorneys' fees and costs related to litigating this Motion for Summary Judgment.

9.  <u>Interest on Attorneys' Fees and Costs Award Pursuant to the Deed of Trust and RCW 4.84.330</u>

Debtors have also requested an award of interest on any attorneys' fees and costs I award pursuant to the Deed of Trust and RCW 4.84.330.  However, RCW 4.84.330 does not provide for an award of interest on attorneys' fees and costs.  Although the Deed of Trust provides for an award of

MEMORANDUM OPINION - 24

interest, RCW 4.84.330 does not confer mutuality of remedy as to every provision in a contract. The statute is limited to attorneys' fees and costs, under certain conditions. Therefore, Debtors are not entitled to an award of interest on attorneys' fees and costs awarded.

## Conclusion

For the reasons set forth above, Debtors' Motion for Summary Judgment is granted, in part. Consistent with this Opinion, I award Debtors $139,171.83 in attorneys' fees and costs thus far. Debtors may also be awarded additional attorneys' fees and costs related to this Motion for Summary Judgment upon further briefing and review. Debtors' counsel shall submit a judgment consistent with this Opinion.

### /// **END OF OPINION** ///

MEMORANDUM OPINION - 25